UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HUI QUN ZHAO,

                            Plaintiff,

   -against-

YU QI WANG,

                            Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

10–CV–1758 (JMA)

A P P E A R A N C E S:

Salamon Davis
Law Office of Salamon Davis
152 Madison Avenue, 3rd Floor
New York, NY 10016
    *Attorney for Plaintiff*

John P. Tumelty
Tumelty & Spier, LLP
160 Broadway, Suite 708
New York, NY 10038

Douglas T. Burns
270 Madison Avenue, Suite 1400
New York, NY 10016
    *Attorneys for Defendant*

**AZRACK, United States Magistrate Judge:**

On April 20, 2010, plaintiff Hui Qin Zhao ("plaintiff") filed the instant replevin action against defendant Yu Qi Wang ("defendant"), with jurisdiction based on diversity of citizenship, seeking to recover ten paintings that were taken from plaintiff in December 1997. Compl. ¶¶ 2, 5, 20, ECF No. 1. Plaintiff also raises, in the alternative, a conversion claim to recover damages in the event that the paintings cannot be recovered. See Compl. § IV(a). On November 30, 2011, both parties consented to me to conduct all proceedings, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. ECF No. 17. Plaintiff has moved for summary

judgment, pursuant to Federal Rule of Civil Procedure 56(c), on his replevin and conversion claims. ECF No. 25. Defendant has cross-moved for summary judgment seeking dismissal of plaintiff's claims. ECF No. 26.

For the reasons set forth below, the Court finds that plaintiff's claims are time-barred. Therefore, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.

## BACKGROUND

**A. Facts**

Plaintiff is an art collector who currently resides in China yet maintained a residence in Dobbs Ferry, New York throughout the 1990s. Compl. ¶ 3. Defendant is a painter who resides in Brooklyn, New York. Id. ¶ 4. In the early 1990s, before defendant acquired a notable reputation, plaintiff took an interest in defendant's work. Id. ¶¶ 8, 9. Between 1991 and 1994, the parties entered into a series of purchase agreements and a contract. Id. ¶¶ 13, 14. During this time, and pursuant to these agreements, plaintiff purchased or obtained possession of at least nineteen paintings by defendant. Id. ¶¶ 11, 13, 14, 16. Of these paintings, eight are at issue here: *Worship* (also known as *Sacrifice* or *Mourning*), *Xiao Shen*, *Dust* (also known as *Girl in Red*), *Mo Ye*, *Huang Heng*, *Zhang Xiao Fan* (also known as *Xiao Fan*), *Tramp Star*, and *Portrait of Artist's Wife* (also known as *Miss Helen*). Pl.'s Rule 56.1 Statement ("Pl.'s 56.1") ¶ 5, ECF No. 25. Two additional paintings, which were not created by defendant, are also at issue: *Tibet Girl* and *Girl with Key* (also known as *Grandfather's Chair*). Id.; Pl.'s Resp. to Def.'s Rule 56.1 Statement ("Pl.'s Resp.") ¶ 1(a), ECF No. 33. Over the course of the parties' business transactions, they formed not only a promoter-artist relationship, but also a friendship and mutual trust. Yu Qi Wang Dep. ("Wang Dep.") 192:13–14, Def.'s Rule 56.1 Statement ("Def.'s 56.1")

2

Ex. 8, ECF No. 31; Hui Qun Zhao Dep. ("Zhao Dep.") 16:14–20, 23:24–24:21, Def.'s 56.1 Ex. 4, ECF No. 29; October 5, 1992 Contract ("1992 Contract") Art. 16, Def.'s 56.1 Ex. 6, ECF No. 30.

The first of the agreements was entered into on April 16, 1991 ("1991 Agreement") and provides plaintiff with ownership rights to ten of defendant's paintings, which are listed in an attachment to the agreement, in exchange for plaintiff's payment of 200,000 renminbi.[1]  1991 Agr. at 1.  Additionally, the 1991 Agreement allows defendant "to use any of the oil paintings listed in the attachment for exhibition needs, [and he] can select it anytime he wants and return it immediately after its use."  Id.  Of the ten paintings included in the 1991 Agreement, four are at issue here: *Worship*, *Xiao Shen*, *Dust*, and *Mo Ye*.  Id. at 3.  It is undisputed that plaintiff paid defendant for these paintings.  Def.'s 56.1 ¶¶ 8, 12, 18, 20.

Subsequently, on October 5, 1992, the parties entered into a purchase agreement ("1992 Agreement") and a contract ("1992 Contract"). The 1992 Agreement provides a "[l]ist of paintings purchased" and requires plaintiff to pay defendant 330,000 renminbi or $12,000.  1992 Agr. at 1, Pl.'s 56.1 Ex. C.  Of the seven paintings listed in the 1992 Agreement, two are at issue in the instant case: *Huang Heng* and *Zhang Xiao Fan*.  Id.  It is undisputed that plaintiff paid defendant for these paintings.  Def.'s 56.1 ¶¶ 14, 16.  The 1992 Contract outlines the parameters of the parties' continued relationship, including the scope of future purchases and promotion obligations, but does not address the sale of any particular painting.  See 1992 Contract at 1–3. Neither the 1992 Agreement nor the 1992 Contract contain a provision similar to the one in the 1991 Agreement that allows defendant to use the paintings for exhibition purposes.

---

[1] The parties each provide a translation of the 1991 Agreement.  The translations differ only semantically, and unless otherwise specified, references and citations to the 1991 Agreement refer to plaintiff's translation by Patrick Feng. 1991 Agr., Pl.'s 56.1 Ex. A.  Defendant provides a translation by Globe Language Services.  Def.'s 56.1 Ex. 3.

Prior to 1997, plaintiff obtained possession of four additional paintings. Two of these paintings were by defendant: *Tramp Star* and *Portrait of Artist's Wife*. Although it is unclear whether these paintings are subject to the 1992 Contract, it is undisputed that plaintiff paid defendant for them. Def.'s 56.1 ¶¶ 6, 10. Plaintiff also obtained possession of two paintings that defendant did not create, *Tibet Girl* and *Girl with Key*. Pl.'s Resp. ¶¶ 22–23; Compl. ¶ 12. Plaintiff has provided a certificate of his purchase of *Girl with Key*, but has provided no such certificate as to *Tibet Girl*. Collection Certificate at 3, Pl.'s 56.1 Ex. F.

In December 1997, the ten paintings at issue were "stolen" from plaintiff's residence.[2] Compl. ¶ 20. Plaintiff reported the theft to the Dobbs Ferry Police Department, which found no evidence of a forced entry. Pl.'s Resp. ¶ 5; Def.'s 56.1 ¶ 5. The ten paintings were placed on the Art Loss Register, an internationally-recognized registry of stolen works of art. Art Theft Report, Pl.'s Resp. Ex. G. During the time preceding the theft, defendant had become "very unhappy" because several paintings had been damaged. Zhao Dep. 67:24–68:21; Def.'s 56.1 ¶ 1; see also Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 3, ECF No. 33; Def.'s Mem. in Opp'n to Pl.'s Mot. Summ. J. and in Supp. Def.'s Mot. Summ. J. ("Def.'s Opp'n") ¶ 4, ECF No. 32. As a result of the damage, defendant had been repairing several paintings in plaintiff's residence shortly before they went missing. Zhao Dep. 84:22–25. After the theft, plaintiff called defendant and notified him that the paintings were missing. Zhao Dep. 83:12–25. According to plaintiff, defendant said nothing during their conversation that raised suspicion that he had the paintings. Zhao Dep. 88:21–89:10. Defendant, however, was the person who took the paintings from plaintiff's home. Def.'s 56.1 ¶ 1; Pl.'s Resp. ¶ 1(g).

---

[2] Plaintiff originally reported eleven paintings missing from his home. Compl. ¶ 20. The eleventh painting, *Flutie*, later "turned out not to be missing" and is not at issue in this litigation. Pl.'s 56.1 ¶ 5.

Subsequently, between 2003 and 2006, defendant sold both *Mo Ye* and *Portrait of the Artist's Wife* to third parties and, therefore, no longer has possession of them. Def.'s Rule 26 Disclosures ("Def.'s Disclosures") ¶ II, Def.'s 56.1 Ex. 7, ECF No. 31; Pl.'s Resp. ¶¶ 10, 11, 18, 19. Also, in 2007, defendant consigned *Tibet Girl* and *Girl with Key* to the China Guardian Auction House, who later listed them for sale. Def.'s 56.1 ¶ 25; Compl. ¶ 30, 38. The Chinese authorities were advised at that time that the paintings had been stolen and, in 2008, seized the paintings pursuant to a seizure warrant signed by United States Magistrate Judge Mark D. Fox of the Southern District of New York. Def.'s 56.1 ¶¶ 23, 25; Warrant of Seizure, Pl.'s 56.1 Ex G. at 15. The United States Attorney's Office for the Southern District of New York then brought a forfeiture action to recover the paintings. Verified Compl., Pl.'s 56.1 Ex. G at 1. As of the commencement of the instant case, both *Tibet Girl* and *Girl with Key* were still in custody of the Chinese authorities. Def.'s Disclosures ¶ II; Pl.'s Resp. ¶¶ 24, 26; see also Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 2, ECF No. 25.

After learning that defendant had consigned *Tibet Girl* and *Girl with Key*, plaintiff brought the instant action on April 20, 2010 to recover the ten "stolen" paintings. Plaintiff alleges that he did not know defendant had the paintings until shortly before this litigation. Compl. ¶¶ 29, 39; Pl.'s Resp. ¶ 1(g). After the start of this action, plaintiff's attorney mailed a letter to defendant's attorney demanding the return of the paintings. June 4, 2010 Letter, Pl.'s Resp. Ex. J.

**B. Parties' Arguments**

Plaintiff moves for summary judgment on his replevin and conversion claims seeking to recover the ten paintings and damages. Plaintiff argues that, because he paid for the paintings at issue, he is indisputably the lawful owner of the paintings and, therefore, he is entitled to

5

summary judgment on his claims. See Pl.'s Mem. at 5; Pl.'s Opp'n at 8. Defendant, on the other hand, cross-moves for summary judgment on plaintiff's claims, arguing that as a matter of law plaintiff's claims are time-barred. See Def.'s Opp'n ¶¶ 1, 6. Alternatively, defendant argues that plaintiff cannot prove every element of his replevin claim. Id.

Plaintiff originally alleged in his complaint that defendant acquired the paintings from an "unknown thief" who stole them from plaintiff's residence. Compl. ¶¶ 1, 29. However, plaintiff now asserts that defendant lawfully removed the paintings from plaintiff's home for an exhibition, pursuant to the 1991 Agreement, but failed to return them because of his dissatisfaction with plaintiff. Pl.'s Opp'n at 3, 7–8. In essence, plaintiff argues that because defendant was a good faith possessor, the three-year statute of limitations would not have begun until defendant refused his 2010 demand to return the paintings. Id. at 7.

In contrast, defendant argues that plaintiff's claims are time-barred, and even if they are not, plaintiff's post-litigation demand letter fails to meet the demand and refusal requirement of a replevin claim, which defendant maintains is a condition precedent to a replevin suit. Def.'s Opp'n ¶ 1. In response, plaintiff argues that his demand letter was sufficient, but that in any event a demand in this case was unnecessary. Pl.'s Opp'n at 7.

The parties also dispute whether plaintiff is the lawful owner of the paintings. However, the Court need not address this issue because, irrespective of who owns the paintings, plaintiff's claims are time-barred. The Court notes that defendant did not raise a counterclaim seeking a declaratory judgment that he is the lawful owner of the paintings.

**DISCUSSION**

A.  **Summary Judgment Standard**

Summary judgment is appropriate where no genuine issue of fact exists to present to the trier of fact.  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986).  The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).  To defeat a properly supported motion for summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587 (internal quotation marks omitted) (emphasis in original) (citing Fed. R. Civ. P. 56(c)).  Mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment.  See Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).

"The same standard of review is applied when the court is faced with cross-motions for summary judgment." Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (citations omitted); see also Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 121 (2d Cir. 2001).  The court, in evaluating cross-motions for summary judgment, must review each party's motion on its own merits and "draw all reasonable inferences against the party whose motion is under consideration." Heffernan, 607 F. Supp. 2d at 407 (citing Morales, 249 F.3d at 121).

B.  **Replevin**

New York State law governs this action.  Def.'s Opp'n ¶ 9; Pl.'s Mem. at 3–4 (citing New York State case law).  In New York, "the law of replevin governs the actions for recovery of stolen property or wrongfully detained property." Dore v. Wormley, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010).  An action in replevin must "establish that defendant is in possession of certain

7

property of which the plaintiff claims to have a superior right." Batsidis v. Batsidis, 9 A.D.3d 342, 343 (N.Y. App. Div. 2d Dep't 2004); Wormley, 690 F. Supp. 2d at 183.

The New York statute of limitations governing actions for recovery of stolen property is three years. N.Y. C.P.L.R. § 214(3). "The date of accrual depends on the identity of the party from whom recovery is sought[,]" which is most typically either a good faith purchaser or possessor, or a thief. DeWeerth v. Baldinger, 836 F.2d 103, 106 (2d Cir. 1987) (applying N.Y. C.P.L.R. § 214(3)); see Solomon R. Guggenheim Found. v. Lubell, 77 N.Y.2d 311, 317–18 (1991). In rare instances, owners seek recovery from a good faith purchaser or possessor, who initially possessed the property lawfully, but later converted the property. See, e.g., Employers' Fire Ins. Co. v. Cotten, 245 N.Y. 102, 104–06 (1927); Songbyrd, Inc. v. Estate of Grossman, 206 F.3d 172, 181–83 (2d Cir. 2000).

In an action to recover property from a bona fide purchaser or good faith possessor, the statute of limitations begins to run when the true owner makes a demand for the return of the property and the possessor refuses to return it. Lubell, 77 N.Y.2d at 317–18; Sanchez v. Univ. of Pennsylvania Museum of Archeology and Anthropology, No. 04-CV-1253, 2004 WL 1621184, *1 (S.D.N.Y. July 20, 2004). A demand and refusal are required in such cases to provide the possessor with "an opportunity to deliver the property to the true owner" before his possession is considered wrongful. State v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 260 (2002) (citations omitted); Lubell, 77 N.Y.2d at 318. In other words, a demand and refusal "changes the character" of good faith possession. Songbyrd, 206 F.3d at 183 (citing Goodwin v. Wertheimer, 99 N.Y. 149, 152 (1885)).

In contrast, when an owner pursues a replevin claim against a thief, there is no demand and refusal requirement and the three-year statute of limitations begins to run when the property

8

was taken, even if the property owner was unaware of the taking at the time it occurred.  Lubell, 77 N.Y.2d at 318; DeWeerth, 836 F.2d at 106.  In other words, "[w]here replevin is sought against the party who converted the property, the action accrues on the date of the conversion." In re Peters, 34 A.D.3d 29, 36 (N.Y. App. Div. 1st Dep't 2006) (citing Sporn v. MCA Records, 58 N.Y.2d 482, 488 (1983)).  The reason for this earlier accrual date is that a demand upon, and refusal from, a thief is deemed futile.  Seventh Regiment Fund, 98 N.Y.2d at 260.  Further, New York has not adopted a discovery rule, which would prevent the cause of action from accruing until the owner discovers the whereabouts the stolen property.  Bakalar v. Vavra, 619 F.3d 136, 141–42 (2d Cir. 2010) (citing Lubell, 77 N.Y.2d at 318–19)).

Similarly, if a bona fide purchaser or good faith possessor later converts the property, a demand and refusal can also be considered unnecessary.  For example, a demand and refusal has been deemed futile in cases where an innocent possessor openly used the property as its own, and also where a bona fide purchaser was informed of the true facts and continued to exercise dominion over the property.  See, e.g., Songbyrd, 206 F.3d at 183; Nat Kaslow, Inc. v. Bletterman, 197 N.Y.S.2d 583, 586–87 (Sup. Ct. N.Y. Cnty. 1960); Employers' Fire Ins. Co. v. Cotten, 245 N.Y. 102, 104–06 (1927) (finding a demand futile where defendant "had full information relating to her own defect in title and the identity of the true owner" and continued to assert dominion over the property).  In such a case, the statute of limitations begins to run at the time of the conversion.  See In re Peters, 34 A.D.3d at 36.

The absence of a discovery rule leads to what the New York Court of Appeals has called an "anomalous" result: an owner who belatedly discovers the theft of his property would rather sue an innocent possessor, against whom the cause of action accrues upon demand and refusal, than a thief or wrongful possessor, against whom the claim accrues immediately upon the

9

conversion because demand and refusal would be unnecessary. Seventh Regiment Fund, 98 N.Y.2d at 261; Lubell, 77 N.Y.2d at 318.

### 1. *Four Paintings Not in Defendant's Possession*

A defendant's possession of the property sought is an element of a claim in replevin. See Batsidis, 9 A.D.3d at 343; Wormley, 690 F. Supp. 2d at 183. It is undisputed that defendant is not in possession of four of the ten paintings at issue: *Girl with Key*, *Tibet Girl*, *MoYe*, and *Portrait of Artist's Wife*. Pl.'s Resp. ¶¶ 10–11, 18–19, 23, 25; Def's Disclosures ¶ II. Accordingly, plaintiff does not have a viable replevin action against defendant to recover them.

### 2. *Six Paintings in Defendant's Possession*

As to the remaining six paintings in defendant's possession, plaintiff's replevin action is time-barred. Under New York replevin law, the date on which the statute of limitations begins to run depends on the nature of a defendant's possession. DeWeerth, 836 F.2d at 106. Here, defendant, in essence, is a thief: he removed the paintings from plaintiff's residence without plaintiff's knowledge and continuously withheld the paintings from plaintiff. Accordingly, the three-year statute of limitations began running in 1997 upon the unlawful taking, regardless of whether plaintiff was aware of the theft. See, e.g., Yakubov v. Sharon Towers Realty, 227 F. App'x 64, 65 (2d Cir. 2007) (applying New York's three-year statute of limitations from date of unlawful taking when defendants could not be classified as good faith purchasers and finding plaintiff's replevin action time-barred); Wormley, 690 F. Supp. 2d at 183–84 (holding replevin and conversion claims time-barred where three-year statute of limitations began when defendant locked plaintiff out of building that contained her property).

10

The Court recognizes that pursuant to the 1991 Agreement defendant may have lawfully taken three of these paintings, *Worship*, *Xiao Shen*, and *Dust,* for an exhibition.[3]  If that is the case, defendant was, in effect, a good faith possessor when he took the paintings; however, plaintiff's claim is still time-barred.  Defendant's continued possession of these paintings constituted a conversion and triggered the start of the statute of limitations, which, at the latest, was when plaintiff called defendant after the theft in 1997 and defendant concealed his possession.  See Bletterman, 197 N.Y.S.2d at 586 ("[C]onversion may consist of wrongful detention as distinguished from wrongful taking . . . [i]n such case, no formal demand for return is necessary.").  Defendant knew he had to return the paintings "immediately" pursuant to explicit language in the 1991 Agreement and he was informed by plaintiff that the paintings were missing.  1991 Agr. at 1; Zhao Dep. 88:21–24.  Defendant concealed his possession from plaintiff, even after being told that the paintings were stolen, and, thus, committed a conversion by wrongfully detaining the property.  See Bletterman, 197 N.Y.S.2d at 587 (holding that even if defendant were a bona fide purchaser of stolen bracelets, he was guilty of conversion when he failed to return the bracelets after being informed of the true facts).  Accordingly, a demand and refusal in this situation would have been futile—a conclusion plaintiff mistakenly argues in his brief[4]—and the statute of limitations began upon defendant's conversion.  See, e.g., In re Peters, 34 A.D.3d at 36 (finding that if court accepted petitioner's claim that artwork was converted,

---

[3] Plaintiff argues in this motion that defendant lawfully took all of the paintings for an exhibition.  Pl.'s Opp'n at 7.  However, only three paintings in defendant's possession are subject to the 1991 Agreement: *Worship*, *Xiao Shen*, and *Dust*.  1991 Agr. at 1, 3.  Accordingly, defendant, at best, could have taken lawful possession of only these three paintings.

[4] In response to defendant's argument that plaintiff's post-litigation demand letter failed to meet the demand and refusal requirement of a replevin claim, plaintiff argues that a demand in this case was unnecessary.  Pl.'s Opp'n at 7.  In support of this assertion, plaintiff quotes the New York Court of Appeals in Employers' Fire Insurance Co. v. Cotton, where the court held that plaintiff's demand was futile because defendant had "acquired knowledge that [the property] had been stolen yet claimed to be 'the true owner' and continued to assert dominion over it."  Id. (quoting 245 N.Y. 102, 104 (1927)).  Plaintiff's response, however, is detrimental to his position because if a demand and refusal were futile, which is indeed the case, the three-year statute of limitations began to run when defendant converted the paintings many years ago.

action would be time-barred because statute of limitations would have began on the date of conversion); Johnson v. Smithsonian Institution, 9 F. Supp. 2d 347, 354 (S.D.N.Y. 1998) (holding that even though artist was unaware that foundation, which initially possessed artwork as a caretaker, had "tortiously held" on to some artwork after he requested possession, New York's statute of limitations began upon request, rendering replevin and conversion actions time-barred), rev'd on other grounds, 189 F.3d 180 (2d Cir. 1999).

In sum, plaintiff's replevin claim as to these six paintings is time-barred. The statute of limitations began in 1997 when defendant, acting as a thief, removed the paintings from plaintiff's residence, or slightly later for *Worship*, *Xiao Shen*, and *Dust* when defendant concealed his possession and wrongfully withheld the paintings from plaintiff. The Court notes that because plaintiff's claim is time-barred, and defendant has not filed a counterclaim seeking a declaratory judgment of ownership, the question of whether plaintiff is the lawful owner of the paintings does not need to be resolved.

**C.  Conversion**

Although plaintiff does not explicitly raise a conversion claim, plaintiff does seek damages from defendant in the event that the paintings cannot be recovered. Under New York law, seeking damages from allegations of "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights sounds in conversion," not replevin. Wormley, 690 F. Supp. 2d at 182–83 (quoting Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex., 87 N.Y.2d 36, 44 (1995)) (internal quotation marks omitted). Thus, the Court construes plaintiff's complaint and motion papers to raise a conversion claim.

An action in conversion is subject to the same three-year statute of limitations as an action in replevin. N.Y. C.P.L.R. § 214(3); Wormley, 690 F. Supp. 2d at 183. Further, in conversion actions, the statute of limitations accrues when the conversion takes place. Wormley, 690 F. Supp. 2d at 183 (citing Vigilant Ins., 87 N.Y.2d at 44; N.Y. C.P.L.R. § 214).

Plaintiff does not have a viable claim in conversion for damages. As with plaintiff's replevin claim, the three-year statute of limitations began in 1997 when defendant unlawfully removed the paintings from plaintiff's residence. See id. at 182–83. Further, even if defendant lawfully took *Worship*, *Xiao Shen*, and *Dust* for an exhibition, the statute of limitations began only slightly later for these paintings, when defendant concealed his possession and wrongfully withheld them from plaintiff. See Vigilant Ins., 87 N.Y.2d at 44 ("[A]ccrual runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover."); Fouad v. Citibank, N.A., 553 N.Y.S.2d 577, 579 (N.Y. Sup. Ct. N.Y. Cnty. 1989) ("[T]he three-year statute of limitations applies to the wrongful taking, withholding, or improper assertion of ownership and control of personal property."). In either event, plaintiff's conversion claim is time-barred.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion for summary judgment and grants defendant's cross-motion for summary judgment. As a matter of law, plaintiff's claims are time-barred. The Clerk of the Court shall enter judgment accordingly and close the case.


Dated: January 24, 2013
Brooklyn, New York

                                                  /s/
                                        JOAN M. AZRACK
                                        UNITED STATES MAGISTRATE JUDGE